IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDUL BROWN | ) | |
| | ) | Civil Action No. 07 - |
| | ) | 637 |
| Plaintiff, | ) | |
| | ) | Judge Gary L. Lancaster / |
| v. | ) | Magistrate Judge Lisa |
| | ) | Pupo Lenihan |
| | ) | |
| JEFFREY BEARD; WILLIAM | ) | |
| STICKMAN; FRED MAUE; LANCE | ) | |
| COUTURIER; DONALD WILLIAMSON; | ) | |
| MIKE ZAKEN; HARRY WILSON; | ) | |
| GEORGE REPOSKY; ADAM CRUMB; | ) | |
| SCOTT NICKELSON; CHARLES | ) | |
| DOBRZYNSKI; ROBERT HOLMAN; | ) | |
| LEE JOHNSON; JOHN MEEKER; | ) | |
| CORRECTIONAL OFFICER CUMMINGS; | ) | |
| KEN KETCHER, | ) | |
| | ) | |

Defendants.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that Defendants' Motion
for Partial Summary Judgment (doc. no.16) be granted in part and
denied in part. Specifically, it should be denied as to
Plaintiff's claims regarding his placement and confinement in
the SMU and granted as to Plaintiff's claims that Defendants put
chewing tobacco in his food and spread a rumor that he was a
"snitch."

**II. REPORT**

Plaintiff, Abdul Brown, is a prisoner presently
incarcerated in the Special Management Unit at the State
Correctional Institution at Fayette, Pennsylvania. He commenced
this action pursuant to the Civil Rights Act of 1871, 42 U.S.C.
§ 1983 complaining about his conditions of confinement and
asserting violations of his constitutional rights as protected

by the First, Eighth and Fourteenth Amendments of the United
States Constitution.  His claims are discussed below.

**A. Plaintiff's Allegations and Material Facts**

On January 2, 2007, Plaintiff was placed in the
Special Management Unit (SMU) at SCI-Fayette.  Prior to this,
Plaintiff had been housed in the Long Term Segregation Unit
(LTSU).  The LTSU was abolished in January, 2007 and replaced by
the SMU.  Restricted Housing in Pennsylvania prisons recently
was discussed by the United States Supreme Court in <u>Banks v.
Beard</u>, 126 S.Ct. 2572 (U.S. 2006) as follows.

> The LTSU is the most restrictive of the
> three special units that Pennsylvania
> maintains for difficult prisoners. The first
> such unit, the "Restricted Housing Unit," is
> designed for prisoners who are under
> disciplinary sanction or who are assigned to
> administrative segregation. The second such
> unit, the "Special Management Unit," is
> intended for prisoners who "exhibit behavior
> that is continually disruptive, violent,
> dangerous or a threat to the orderly
> operation of their assigned facility." The
> third such unit, the LTSU, is reserved for
> the Commonwealth's "most incorrigible,
> recalcitrant inmates."
>
> LTSU inmates number about 40.  Most,
> but not all, have "flunked out" of the SMU
> program.  To qualify, they must have met one
> or more of the following conditions: failure
> to "complete" the SMU program; "assaultive
> behavior with the intent to cause death or
> serious bodily injury"; causing injury to
> other inmates or staff; "engaging in
> facility disturbance(s)"; belonging to an
> unauthorized organization or "Security
> Threat Group"; engaging in criminal activity
> that "threatens the community"; possessing
> while in prison "weapons" or "implements of
> escape"; or having a history of "serious"
> escape attempts, "exerting negative
> influence in facility activities," or being
> a "sexual predator."  The LTSU is divided
> into two levels. All inmates are initially

> assigned to the most restrictive level,
> level 2. After 90 days, depending upon an
> inmate's behavior, an individual may
> graduate to the less restrictive level 1,
> although in practice most do not.
>
> The RHU, SMU, and LTSU all seriously
> restrict inmates' ordinary prison
> privileges. At all three units, residents
> are typically confined to cells for 23 hours
> a day, have limited access to the commissary
> or outside visitors, and (with the exception
> of some phases of the SMU) may not watch
> television or listen to the radio.

Banks, 126 S.Ct. at 2576 (internal citations omitted).

Plaintiff complains that he was placed in the SMU without due process, specifically without any mental health screening or hearing or notice (Complaint, at ¶¶ 21-22; 24). He further alleges that he has been subjected to an extremely hostile environment and subjected to torture, *i.e.*, excessive use of restraint chair (Complaint, ¶ 25). He claims that Defendants have confined him there in order to conduct psychiatric research (Complaint, ¶ 18). He claims that his disruptive behavior is due to his mental condition, bi-polar disorder and low Global Assessment Function of 55, and that his confinement in the SMU is exacerbating his mental illness (Complaint, ¶ 34-35). Plaintiff claims that Defendants violated his Eighth Amendment rights by subjecting him to cruel and unusual conditions of confinement, unlawfully retaliating against him in violation of his First Amendment rights, and violated his Fourteenth Amendment due process and equal protection rights through his placement and continued confinement in the SMU.

In Count II of his Complaint, Plaintiff alleges that he was exposed to excessive force on December 12, 2005 when he was forcibly dragged out of his cell by unidentified guards dressed in full riot gear (Complaint, ¶ 39). He subsequently was placed in the Restraint Chair where he was maliciously shocked with an electric tazer, which caused him to vomit and defecate himself (Complaint, ¶¶ 41-42). He claims that Defendants used mace and other poisons despite the fact that he is asthmatic. Plaintiff complains that he already was being retaliated against per orders of Defendants Wilson and Zaken because of his numerous lawsuits and that Defendants Holman and Cummings denied him food on many occasions for no reason when he was secured in a cell behind a security food slot (Complaint, ¶ 44).

In Count III, Plaintiff claims that on February 6, 2006, he filed a grievance against LTSU staff for spitting chewing tobacco in his food (Complaint, ¶¶ 49-54). In retaliation for filing the greivance, Defendants Crumb, Dobrzynski, Holman and Meeker spread a false rumor that he was a "snitch." In response, inmates began threatening Plaintiff if he attended recreation.

## B. Standard of Review

Presently pending is Defendants' Partial Motion for Summary Judgment (doc. no. 16). Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show

that there is no genuine issue of material fact and the movant
is entitled to judgment as a matter of law.  Fed. Rule Civ.
Proc. 56(c).  Summary judgment may be granted against a party
who fails to adduce facts sufficient to establish the existence
of any element essential to that party's case, and for which
that party will bear the burden of proof at trial.  Celotex
Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for
summary judgment by "pointing out to the district court that
there is an absence of evidence to support the non-moving
party's case.").  The moving party bears the initial burden of
identifying evidence that demonstrates the absence of a genuine
issue of material fact.  Once that burden has been met, the non-
moving party must set forth ". . . specific facts showing that
there is a genuine issue for trial . . ." or the factual record
will be taken as presented by the moving party and judgment will
be entered as a matter of law.  Matsushita Elec. Ind. Co. v.
Zenith Radio Corp., 475 U.S. 574 (1986).  An issue is genuine
only if the evidence is such that a reasonable jury could return
a verdict for the non-moving party.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242 (1986).  The inquiry, then, involves
determining " 'whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law.' "
Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert.
denied, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-
52).  If a court concludes that "the evidence is merely

5

colorable . . . or is not significantly probative," then summary judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249-50.

**C. Defendants' Motion for Partial Summary Judgment**

Defendants seek summary judgment with regard to all of Plaintiff's claims except the excessive force and retaliation claims associated with the alleged events of December 12, 2005. The bases for their motion are discussed below.

1.    <u>Placement and Confinement in the SMU</u>

Defendants first argue that Plaintiff's claims regarding SMU placement and continued confinement are barred by the doctrine of *res judicata* due to his previous lawsuit in this Court at Civil Action No. 04-1361, which currently is on appeal to the Court of Appeals for the Third Circuit.  Defendants are wrong in their assertion as Plaintiff is complaining about his placement in the SMU on January 2, 2007 and his continued confinement therein.  Civil Action No. 04-1361 concerned his placement in the LTSU.  While there certainly are similarities between the two, they are not the same and Plaintiff could not have raised his claims concerning his placement in the SMU in his previous lawsuit.  Consequently, Defendants are not entitled to summary judgment on the basis that Plaintiff's claims concerning his SMU placement and confinement are barred by *res judicata*.

2.    <u>Failure to Exhaust Administrative Remedies</u>

Next, Defendants argue that Plaintiff may not pursue his claims concerning spitting tobacco in his food and his being labeled a snitch on the basis of his alleged failure to have

exhausted his available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows.

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The available administrative remedies for Pennsylvania inmates are codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." *See, e.g.* Mitchell v. Horn, 318 F.3d 523 (2003) (discussing DOC Grievance System).[1] The purpose of the grievance system is to ensure that "every individual committed to [DOC] custody shall have access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. For every such issue, there shall be

---

1. *See also* 37 Pa. Code § 93.9(a) (1999) (establishing requirement for DOC to establish an inmate grievance system) DOC policies, including the grievance system policy may be accessed on the worldwide web at http://www.cor.state.pa.us/ standards/lib/standards/DC-ADM_804_Inmate_Grievances.pdf.

a forum for review and two avenues of appeal.  The formal procedure shall be known as the Inmate Grievance System." DC-ADM 804 ¶ V.  The DOC grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the chief hearing examiner.

Specifically, inmate grievances must be in writing and in the format provided on the forms supplied by the institution. DC-ADM 804 ¶ (VI)(A)(1)(f).  An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based.  DC-ADM 804 ¶ (VI)(A)(1)(h).  Specific procedures for the appeal by an inmate of an unsatisfactory decision on a grievance are also provided.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner).  In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions.  In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement.  Booth, 206 F.3d at

300; <u>Nyhuis</u>, 204 F.3d at 66.  A unanimous Supreme Court affirmed the Court of Appeals' holding in <u>Booth v. Churner</u>, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. As stated by the Third Circuit, "it is beyond the power of this court--or any other--to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  <u>Nyhuis</u>, 204 F.3d at 73 (quotation omitted).  The Supreme Court of the United States reiterated this tenet when it affirmed the Third Circuit's holding in <u>Booth</u>.

Moreover, the Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court.  *See* <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004).  In so holding, the Court of Appeals specifically held that failing to specifically name accused individuals in a grievance amounted to procedural default because the regulations so required.[2]

The United States Supreme Court adopted a similar holding in <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378 (June 22, 2006) wherein it held that an untimely "or otherwise

---

2  The relevant regulations provide as follows:  "The inmate shall include a statement of the facts relevant to the claim. The inmate should identify any persons who may have information that could be helpful in resolving the grievance.  The inmate should also include information on attempts to resolve the matter informally. DC-ADM 804, Part VI.A.1.d.

procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement. Woodford, 126 S.Ct. at 2382.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule … courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 126 S. Ct. at 2385-2386 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 126 S. Ct. at 2387. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system

is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Woodford, 126 S.Ct. at 2388.

The record evidence in this action shows that Plaintiff filed grievances concerning the spitting tobacco and labeling him a snitch but failed to appeal either of them through to the third level of appeal. In his Response to Defendants' Motion for Summary Judgment, he fails to submit any evidence showing that he filed for final review in either of his grievances. In the absence of any controlling authority to the contrary, this Court is required to follow the directive of the United States Supreme Court and grant Defendants' Motion for Partial Summary Judgment due to the Plaintiff's failure to have exhausted his available administrative remedies as to his claims concerning chewing tobacco in his food and labeling him a snitch. *Accord* Thinna v. Beard, 2007 WL 2007989, *3 (M. D. Pa. July 5, 2007) (granting summary judgment where Plaintiff failed to submit any evidence to controvert Defendants' submissions that Plaintiff failed to timely file his grievance appeals).

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion for Partial Summary Judgment (doc. no. 16) be granted in part and denied in part. Specifically, it should be denied as to Plaintiff's claims regarding his placement and confinement in the SMU and granted as to Plaintiff's claims that Defendants put chewing tobacco in his food and spread a rumor that he was a "snitch."

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service of a copy of this Order to file objections to this Order. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


February 20, 2008

Lisa Pupo Lenihan
United States Magistrate Judge

cc:   The Honorable Gary L. Lancaster
      United States District Court Judge

      Abdul Brown
      #60660-066
      FDC Philadelphia
      P. O. BOX 562
      Philadelphia, PA 19105