IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDUL BROWN, | ) | |
| | ) | Civil Action No. 07 - 637 |
| Plaintiff, | ) | |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | ECF No. 147 |
| LEE JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff, Abdul Brown, is an inmate in the custody of the Pennsylvania Department of Corrections currently incarcerated at the State Correctional Institution at Camp Hill. He initiated this matter on May 14, 2007, by filing a Complaint pursuant to 42 U.S.C. § 1983 complaining about the conditions of his confinement while in the Special Management Unit ("SMU") at SCI-Fayette. After a lengthy case history, this Court issued a Memorandum Order on March 21, 2011, (ECF No. 135), granting Defendants' motion for summary judgment except as to Plaintiff's claim that Defendant Lee Johnson used the EBID after Plaintiff was fully restrained in the restraint chair and thus incapable of being a threat. The Court then ordered the parties to brief the issue of whether the remaining claim had been properly exhausted pursuant to § 1997e(a) of the Prison Litigation Reform Act ("PLRA"). Accordingly, on December 16, 2011, Defendant filed a Concise Statement of Material Facts Not in Dispute (ECF No. 148), a Motion for Summary Judgment (ECF No. 147) and a Brief in Support of Summary Judgment (ECF No. 149) addressing the exhaustion issue. Plaintiff filed a Brief in Opposition to Summary Judgment

(ECF No. 154) and a Responsive Concise Statement of Material Facts (ECF No. 156). Defendant filed a Reply (ECF No. 158) to Plaintiff's response in opposition to summary judgment. Defendant's motion is now ripe for review by this Court.

## A. Summary Judgment Standard

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.

Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### B. Facts

On December 12, 2005, while housed in the long term segregation unit at SCI-Fayette, Plaintiff smashed his cell door windows and ripped a metal plate off the wall inside his cell. Plaintiff was also observed threatening to assault staff with a mixture of urine and feces which he intended to throw out of his cell. In response to this situation, Lieutenant George Reposky assembled a cell extraction team and reported to Plaintiff's cell. In addition to the notes of the ensuing exchange, which Lieutenant Reposky prepared immediately thereafter, the cell extraction was videotaped by a corrections officer commencing with the assembly of the extraction team.[1] In briefing the cell extraction team, Lieutenant Reposky stated that Plaintiff had been medically cleared for the use of Oleoresin Capsicum (O.C.) (essentially mace or pepper spray), as well as the Electronic Barring Immobilization Device ("EBID"). The extraction team was accompanied by a nurse for the purposes of ensuring Plaintiff's continued well-being during the extraction. Lieutenant Reposky and the extraction team approached Plaintiff's cell, whereupon they discovered that Plaintiff had covered the window in the door with a towel. After Plaintiff refused several direct orders to remove the towel and submit himself to be handcuffed, Lieutenant Reposky administered a two-second burst of O.C. through the food aperture in Plaintiff's cell door. Plaintiff threw the aforementioned mixture of urine and feces at Lieutenant

---

[1] The cell extraction was videotaped pursuant to DOC policy and the video was submitted to the Court as an exhibit to a previous motion for summary judgment in this case. The Court has re-reviewed the video for purposes of the instant motion for summary judgment.

3

Reposky as he opened the food aperture.  This initial dose of O.C. appears to have had no effect on Plaintiff, who can be heard speaking clearly – even shouting – at the officers even after its application.  After being convinced to dispose of a second cup of urine and feces mixture, Plaintiff voluntarily submitted himself to be handcuffed and was removed from the cell without further incident.

Plaintiff was thereafter placed in a holding cell area so that the requisite strip search could be performed.  At this time, Plaintiff was laughing and taunting the Corrections Officers and threatening "y'all gonna pay for this."  After he refused several direct orders regarding the search, O.C. was used for a second time by Lieutenant Reposky.  Once the strip search was completed, Plaintiff's eyes were washed by the nurse.  Plaintiff was then removed from the holding cell area and taken to another cell where he was placed in a restraint chair and secured.  While Plaintiff was being secured in the chair, Officer Jay Haines used the hand-held EBID on Plaintiff when he began resisting the application of the arm restraints.  Once Plaintiff was secure therein, his eyes were once again washed and the restraints were checked.  Upon his complaints of shortness of breath, the nurse administered Plaintiff's inhaler.

After Plaintiff was secured and bound to the restraint chair, the video camera was turned off.  Plaintiff alleges that, at some point after the video camera had been turned off, Defendant Johnson shocked him two or three times with the EBID even though he was incapable of being a threat to anyone and also incapable of any defense.  He claims that this use of the EBID caused him to vomit and defecate on himself.

Plaintiff was placed in the restraint chair at approximately 10:30 a.m. and was removed at approximately 6:30 p.m.

### C. Analysis

Defendant argues that Plaintiff may not pursue his claim concerning the alleged improper use of the EBID device on him after he was fully restrained in the restraint chair on the basis of his failure to have exhausted his available administrative remedies as required by the PLRA. Through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66. A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures.

As stated by the Third Circuit, "it is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis, 204 F.3 at 73 (quotation omitted).  The Supreme Court of the United States reiterated this tenet when it affirmed the Third Circuit's holding in Booth.

Additionally, the Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of the DOC's grievance policy results in procedural default, thereby precluding an action in federal court.  *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  In so holding, the Court of Appeals specifically held that failing to specifically name accused individuals in a grievance amounted to procedural default because the regulations so required.

The United States Supreme Court adopted a similar holding in Woodford v. Ngo, 126 S. Ct. 2378 (2006) wherein it held that an untimely "or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement.  Id. at 2382.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  This Court has described the doctrine as follows: "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objections made at the time appropriate under its practice."  Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Id. at 2385-86 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 2387. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Id. at 2388.

In the instant case, the record reveals that Plaintiff filed Grievance Number 138822 on December 20, 2005, alleging excessive force based on the incident of December 12, 2005. In the grievance, Plaintiff alleged, *inter alia*, that "C/O John Doe stun me with the EBID while I was strapped in the chair because I was speaking my mind." Plaintiff appealed the grievance through final review, which was denied on February 3, 2006.

Defendant argues Plaintiff failed to properly exhaust his administrative remedies under the PLRA with respect to his claim that Defendant Johnson used the EBID device on him after he was fully restrained in the restraint chair and incapable of being a threat. Specifically, Defendant asserts that the "John Doe" in Plaintiff's grievance is the individual who used the EBID on him the first time, while he was being placed in the restraint chair, and the Court has already determined that this individual was Officer Jay Haines and that its use on that occasion did not violate the Constitution as it was reasonable and necessary to control the Plaintiff while he was being strapped into the restraint chair. While Defendant admits that Plaintiff exhausted his claim that Officer Haines used the EBID device on him on December 12, 2005, they contend that Plaintiff did not exhaust any claim that Defendant Johnson used the EBID device on him at a

later time. Plaintiff argues that he did not specify in his grievance that he was stunned only one time and that Defendant is mistaken to assume that his grievance refers to, and is restricted to, a single use of the EBID device. He suggests that the grievance should be construed to cover all of the events related to the cell extraction until his release from the restraint chair over eight hours later.

The Supreme Court has held that the PLRA does not establish the level of specificity that an inmate plaintiff must include to fully exhaust his or her claim. Rather, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion," Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (quoting Spruill, 372 F.3d at 231), and Third Circuit precedent makes clear that a prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. Nickens v. Department of Corr., 277 F. App'x 148, 152 (3d Cir. 2008) (citing Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) and Spruill, 372 F.3d at 228, 231). However, the Third Circuit has also stated that the PLRA does not require perfect overlap between the grievance and the complaint; rather the two must simply share a factual basis. Jackson v. Ivens, 244 F. App'x 508, 513 (3d Cir. 2007) (unpublished).

The Inmate Grievance System for the Commonwealth of Pennsylvania Department of Corrections, DC-ADM 804, in place at the time Plaintiff filed Grievance Number 138822, specified that an inmate filing a grievance must "include a statement of the facts relevant to the claim . . . [and] identify any person(s) who may have information that could be helpful in

resolving the grievance." DC-ADM 804, Inmate Grievance System Policy § VI(A)(7). Thus, it appears that for Plaintiff to have properly exhausted his claim that Defendant Johnson used the EBID device after he was fully restrained to the chair and incapable of being a threat, Plaintiff had to, at the very least, present facts in his grievance "relevant" to the incident.

It is undisputed that Plaintiff was shocked with the EBID device at least one time while the officers were putting him into the restraint chair. It is also undisputed that, in Grievance Number 138822, Plaintiff makes an explicit reference to being "stunned" with the EBID device while strapped in the chair. Plaintiff's grievance does not specify how many times this occurred and by whom, although a plain reading would indicate that it only occurred once. Nevertheless, reading this statement in context with the entirety of Plaintiff's grievance, it is evident that Plaintiff's reference to being shocked with the EBID device is in regard to its use by Officer Haines when Plaintiff was resisting the application of the arm restraints. Specifically, Plaintiff's grievance details a step by step account of his cell extraction on December 12, 2005, complaining of conduct by Lieutenant Reposky and his staff and culminating with the statement that he would like the "video recording [of the incident] held for civil action." For example, Plaintiff first states that a "riot team" was sent to extract him, at which point Lieutenant Reposky sprayed O.C. in his cell knowing he had asthma. He states that he was taken to the strip search area where he was again sprayed with O.C. for no justifiable reason and then he was taken to another cell where he was "strapped in a chair." At this point in his grievance, Plaintiff states that C/O John Doe "stunned" him with the EBID device while he was "strapped in the chair"

because he was "speaking [his] mind."[2]  Then Plaintiff goes on to complain that the restraint belts on the chair were used as "torture" devices because they were applied too tightly.

Reading the statement concerning the use of the EBID device in context with the rest of Plaintiff's grievance, it would logically follow that the use of the device by John Doe was in reference to the first time it was used by Officer Haines.  Plaintiff makes no mention of what allegedly took place after the video recording was stopped.  Instead, he specifically makes reference to the fact that the events of which he complains were captured on video, which would include Officer Haines' use of the EBID device.  In addition, Plaintiff plainly stated in his deposition that by John Doe, he meant the individual who had used the EBID on him the first time, which has already been established was Officer Haines.  Contrary to Plaintiff's contention that his grievance should be construed to encompass all the events related to his cell extraction until the time he was released from the restraint chair, Plaintiff's grievance was not sufficient to put prison officials on notice of Plaintiff's claim that Defendant Johnson came into Plaintiff's cell after he was fully restrained to the chair and used the EBID device without reason because the grievance does not contain facts relevant to this incident.  Thus, the Court is constrained to find that Grievance Number 138822 did not suffice to exhaust Plaintiff's administrative remedies and Defendant Johnson is entitled to summary judgment.

### D. Conclusion

For the reasons set forth above, Defendant Johnson is entitled to summary judgment with respect to Plaintiff's claim.  An appropriate order will be entered.

---

[2]  The Court feels it necessary to note that Plaintiff's legs were already strapped to the restraint chair when Officer Haines used the EBID device.  However, the device was used when the officers were attempting to strap Plaintiff's arms into the chair and Plaintiff appeared to be resisting.

Dated: February 24, 2012

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Abdul Brown
 #DP2655
 SCI-Camp Hill
 P.O. Box 200
 Camp Hill, PA  17001

 Counsel of Record